HERMAN BROS., INC., APPELLANT, V.
GREAT WEST CASUALTY COMPANY, APPELLEE.
582 N.W. 2d 328

Filed July 24, 1998.   No. S-97-274.

Kermit A. Brashear, Donald J. Straka, Mary P. Galligan, Scott E. Daniel, and Anna M. Bednar, of Brashear & Ginn, for appellant.

Eugene P. Welch, of Gross & Welch, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, and STEPHAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Herman Bros., Inc. (HBI), commenced this action against its insurer, Great West Casualty Company (Great West), for damages based upon a denial of coverage. Both parties moved for summary judgment. The trial court found that HBI had failed to give adequate and timely notice of its claim to Great West and that Great West had been prejudiced by this lack of notice. The court entered summary judgment in favor of Great West, and HBI appeals.

## SCOPE OF REVIEW

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts

and that the moving party is entitled to judgment as a matter of law. *Chalupa v. Chalupa*, 254 Neb. 59, 574 N.W.2d 509 (1998).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

As to questions of law, an appellate court has an obligation to reach a conclusion independent from the trial court's conclusion. *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996).

## FACTS

On December 1, 1988, Great West issued a series of umbrella policies to HBI for successive 1-year periods through December 1, 1991. The umbrella policies provided excess coverage over HBI's liability policies and workers' compensation policy. Pursuant to the umbrella policies, Great West agreed to pay on behalf of HBI all sums in excess of HBI's self-insured retention amount of $10,000, which HBI became obligated to pay as a result of personal injury liability, together with expenses associated with the investigation, negotiation, settlement, and defense of any suit seeking damages for personal injuries.

In 1988, HBI provided interstate trucking services for Liquid Air Corporation (Liquid Air). HBI operated a terminal at Sharon, Pennsylvania, under various collective bargaining agreements with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 261, AFL-CIO (the Union). Since HBI's contract with Liquid Air was due to expire in October 1988, it began negotiations with Liquid Air. HBI sought several concessions from the Union in order to make a competitive bid to renew its contract, but the Union refused these concessions. Liquid Air subsequently canceled its contract with HBI and entered into a new contract with Quickie Transport Co., Inc. (Quickie).

Quickie was a nonunion trucking company based in Minneapolis, Minnesota, and had a terminal located in Masury, Ohio. On February 17, 1989, HBI closed its Sharon, Pennsylvania, terminal and permanently laid off the employees

at the terminal. On April 7, a "Charge Against Employer" was filed with the National Labor Relations Board (NLRB) by the Union against HBI, Liquid Air, and Quickie.

On April 17, 1991, an amended charge was filed against HBI. This amended charge alleged that HBI had laid off its employees at the Sharon, Pennsylvania, facility because of their union membership and that HBI had failed to collectively bargain with the Union regarding rates of pay, wages, hours of employment, and other conditions of employment, in violation of § 8(a)(1), (3), and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), and (5) (1994).

A formal complaint was filed by the NLRB on April 19, 1991, alleging that HBI failed to bargain collectively and in good faith and that it *discriminated* against individual members of the Union in regard to their hiring, tenure, and terms or conditions of employment. The NLRB sought to impose liability on HBI by alleging that HBI and Quickie constituted a single employer.

In June, October, and December 1992, hearings were held in connection with the NLRB action. During a recess at one of the hearings, HBI commenced settlement negotiations with the NLRB. Following negotiations, the NLRB and HBI reached a tentative settlement of $290,000.

In early December 1992, soon after the tentative settlement agreement was drafted, representatives of HBI met with Todd Zeller, an employee of the insurance brokerage firm which sold HBI its umbrella policy, to review the policy to determine whether coverage existed regarding the claim. Zeller opined that because the umbrella policy had a broad personal injury definition and was excess over the underlying policies, HBI could submit its claim to Great West for coverage.

On December 8, 1992, Zeller and representatives of HBI met with John Fitzgerald and Pat Kuehl of Great West for the purpose of reviewing the various insurance policies and to notify Great West of the NLRB action. Fitzgerald requested HBI to provide additional information concerning the claim and advised that Great West would check the language of the umbrella policy. On December 23, HBI sent Great West written notification of its claim which set forth the factual basis of the

claim, including the amended charge, the NLRB complaint, and the status of the proposed settlement. HBI demanded that Great West pay $290,000 less the $10,000 policy retention amount before January 1, 1993.

In a response dated December 30, 1992, Great West denied coverage and refused to provide payment. After receipt of the correspondence from Great West, HBI paid the Union $290,000.

On March 23, 1994, HBI commenced this action against Great West to recover the amount of the settlement plus the attorney fees it incurred in connection with the NLRB action. In its answer, Great West asserted that notice of the claim was untimely; Great West was not given an opportunity to "associate in the defense and control of" the claim; HBI had not sustained a personal injury; and HBI had engaged in acts that were committed with actual malice or a willful violation of a penal statute or ordinance and, therefore, no coverage was provided.

Following a hearing on each party's respective motion for summary judgment, the trial court concluded that HBI had failed to give adequate and timely notice of the claim and that this lack of notice had prejudiced Great West. Accordingly, the trial court overruled HBI's motion for summary judgment and sustained Great West's motion for summary judgment.

## ASSIGNMENTS OF ERROR

HBI makes the following assignments of error: (1) The trial court erred in sustaining Great West's motion for summary judgment, finding that HBI had failed to give adequate notice of the underlying claim and that Great West had been prejudiced as a matter of law, and (2) the trial court erred in overruling HBI's motion for summary judgment.

## ANALYSIS

In summary, HBI argues that there is a material issue of fact regarding whether the date of the occurrence was the date that the amended charge was filed or the date of the December 1992 hearing and that there is a material issue of fact regarding whether Great West received adequate and timely notice of the claim. HBI also claims that Great West failed to prove that it was substantially prejudiced as a result of the alleged late notice.

On a motion for summary judgment, the question is not how the factual issue is to be decided, but whether any real issue of material fact exists. *Bruning v. Law Offices of Ronald J. Palagi*, 250 Neb. 677, 551 N.W.2d 266 (1996). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Chalupa v. Chalupa*, 254 Neb. 59, 574 N.W.2d 509 (1998). The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Eiche v. Blankenau*, 253 Neb. 255, 570 N.W.2d 190 (1997). A movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence were uncontroverted at trial. At that point, the burden of producing evidence shifts to the party opposing the motion. *Harrison v. Seagroves*, 250 Neb. 495, 549 N.W.2d 644 (1996). As to questions of law, an appellate court has an obligation to reach a conclusion independent from the trial court's conclusion. *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996).

Relying upon the above standards of review and propositions of law, we begin our analysis of the trial court's determination that HBI did not give timely notice to Great West and Great West was prejudiced as a matter of law. Since all of the arguments regarding the assignments of error are interrelated, we will consider them collectively.

The commercial catastrophe policy in question defined a "personal injury" as

> injury, such as but not limited to, libel, slander, defamation of character, *discrimination*, false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation which occurs during the policy sustained by a natural person, but excluding any such injury included within the definition of advertising liability.

(Emphasis supplied.) An "occurrence" was defined as

> (b) with respect to Personal Injury Liability, an offense which results in Personal Injury, other than an offense

> committed with actual malice or the willful violation of a penal statute or ordinance committed by or with the knowledge of [sic] consent of the insured. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

Regarding notice to the insurer, the policy required the following:

> Upon the happening of an occurrence reasonably likely to involve the company hereunder, written notice shall be given as soon as practicable to the company or any of its authorized agents. Such notice shall contain particulars sufficient to identify the insured and the fullest information obtainable at the same time.

HBI argues that viewing the evidence in the light most favorable to it, HBI was first notified of the damage claim during the NLRB hearing in early December 1992. It contends that up until that time, the only relief sought was to have HBI reopen the Sharon, Pennsylvania, terminal, and that nothing in the amended charge or the NLRB complaint confirmed that a personal injury had been sustained or that the NLRB was seeking damages. HBI reasons that since the policy required a personal injury before it had to provide notice of a claim, it could not provide such notice until a personal injury was alleged. Therefore, HBI claims that an issue of material fact exists as to whether the occurrence was the date the amended charge was filed; the date the complaint was filed; or the date of the December 1992 NLRB hearing, when the NLRB presented a claim for damages.

We disagree. The facts surrounding the case are basically undisputed, and what qualifies as an occurrence pursuant to the insurance contract between the parties may be decided as a matter of law. Also, interpretation and construction of an unambiguous term in an insurance contract or policy involves questions of law, in connection with which an appellate court has an obligation to reach its conclusions independent of the determinations made by the court below. See, *Farm Bureau Ins. Co. v. Bierschenk*, 250 Neb. 146, 548 N.W.2d 322 (1996); *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 243 Neb. 779, 502 N.W.2d 484 (1993).

The policy provided: "Upon the happening of an occurrence reasonably likely to involve the company hereunder, written notice shall be given as soon as practicable to the company or any of its authorized agents." Without deciding whether coverage was provided by the policy, we conclude as a matter of law that the filing of the complaint and notice of hearing by the NLRB on April 19, 1991, was an occurrence reasonably likely to involve Great West.

As the basis for its petition against Great West, HBI relies upon the complaint filed by the NLRB on April 19, 1991. Similarly, in the letter HBI sent to Great West on December 23, 1992, HBI concluded that Great West should provide coverage for the claim. In reaching this conclusion, HBI relied upon nothing more than the language in the complaint and the policy. Thus, at the time of the April 19, 1991, complaint, HBI should have known that there had been an "occurrence" reasonably likely to involve Great West and that it was required to provide notice to Great West.

Next, we consider whether HBI gave Great West adequate and timely notice of the claim. The purpose of a notice provision in an insurance policy is to alert the insurer of a possible claim to give it the opportunity to make an investigation in order to enable it to process any future claim. *Gerrard Realty Corp. v. American States Ins. Co.*, 89 Wis. 2d 130, 277 N.W.2d 863 (1979).

In *Gerrard Realty Corp.*, the Supreme Court of Wisconsin held that the principles governing construction of errors and omissions policies are the same as those applied to indemnity and liability policies, the purpose being to require that an insurer be given timely notice to afford the insurer the opportunity to investigate possible claims against the policy. Since HBI should have known on April 19, 1991, that a claim which might reasonably involve its umbrella policy had been filed and since HBI did not notify Great West of the claim until December 1992, we conclude that HBI did not give timely notice of the claim.

However, our resolution of these issues does not end our inquiry. We must determine in actions in which the insurer asserts untimely notice by the insured as a basis for denying

coverage whether the insurer must also prove that the untimely notice prejudiced the insurer. We have considered the insured's failure to give timely notice in two previous cases—*MFA Mutual Ins. Co. v. Sailors*, 180 Neb. 201, 141 N.W.2d 846 (1966), and *Ach v. Farmers Mut. Ins. Co.*, 191 Neb. 407, 215 N.W.2d 518 (1974).

HBI argues that regardless of whether it gave adequate notice, the trial court erred in granting summary judgment because Great West failed to establish that it had been prejudiced by the late notice. In response, Great West asserts that it was afforded no opportunity to make an investigation or to participate in the hearings and settlement negotiations and that it was prejudiced as a matter of law. In light of the positions taken by HBI and Great West, we will briefly examine *MFA Mutual Ins. Co.* and *Ach*.

In *MFA Mutual Ins. Co.*, the issue was whether the breach of the notice requirements of the policy resulted in prejudice or detriment to the insurer (MFA). A cooperation clause in the policy required the insured to give written notice of an accident as soon as practicable. We noted that the purpose of this cooperation clause was to prevent collusion between the injured and the insured and to facilitate the handling of claims by the insurer. The central issues were whether the insured's failure to give timely notice prejudiced MFA and whether a showing of such prejudice was necessary before the insurer could deny coverage. MFA contended that no showing of prejudice was required and that, in any event, prejudice was to be presumed from a material breach of the terms of the policy. We concluded that where there was no evidence of collusion and it was not shown that the insurer had been prejudiced due to not receiving notice, the better rule was that the lack of timely notice did not permit the insurer to deny coverage.

In *Ach*, the insured claimed that in the absence of a showing of prejudice to the insurer, the delay in giving notice could not defeat the right to recovery. A ring had been stolen from an insured's home, and the theft of the ring was discovered by the insured's wife in July 1971, a few days after the theft occurred. The wife was afraid to report the theft to her husband, and as a consequence, no report was made to the insurance company or

the police until December 1971. We affirmed the trial court's finding that the insured had not given timely notice of loss to the insurer, as required by the policy, and affirmed the denial of recovery. We found nothing in the evidence which excused the insured's delay of 5 months in notifying the insurer of the theft of the ring. However, our decision in *Ach* did not overrule *MFA Mutual Ins. Co.*, because the issue of prejudice was never directly addressed. We stated: "The only issues we need to notice are those related to the plaintiffs' contention that the delay in giving notice was excusable." *Ach*, 191 Neb. at 408, 215 N.W.2d at 519.

The federal courts have interpreted Nebraska case law similarly. In *Lindsay Mfg. Co. v. Hartford Acc. & Indem. Co.*, 911 F. Supp. 1249 (D. Neb. 1995), *reversed on other grounds* 118 F.3d 1263 (8th Cir. 1997), the U.S. District Court stated that under Nebraska law, an automobile insurer may not assert breach of notice or breach of a cooperation clause as a policy defense in the absence of a showing of prejudice to the insurer. Courts in a substantial number of jurisdictions, Nebraska included, have taken the position that in order to escape liability or the duty to defend on account of an insured's unreasonable and unexcused delay in giving notice of a claim, a liability insurer is required to show that it was prejudiced. Annot., 32 A.L.R.4th 141 (1984). Therefore, we adhere to the proposition that where there is no evidence of collusion and it is not shown that the insurer has been prejudiced in its handling of the claim, the failure to give timely notice is not a defense to the claim.

In our consideration of whether there is a material issue of fact that HBI's failure to give timely notice was prejudicial to Great West, we point out that the mere passage of time generally does not establish prejudice to the insurer. In *Reliance Ins. Co. v. St. Paul Ins. Companies*, 307 Minn. 338, 239 N.W.2d 922 (1976), the court suggested that failure to give timely notice may prejudice the insurer from promptly investigating the claim and impede its defense against fraudulent claims. The court then held that a delay of 18 months between the event and the insured's notice of claim under the policies did not render the policies unenforceable where the delay did not deprive the insurers of the opportunity for prompt investigation and did not

impede their defense against the claim. Although agreeing with the trial court that 18 months between the event and notification was an extreme length of time, the court found that the insurers carried the burden to show prejudice.

In *Gerrard Realty Corp. v. American States Ins. Co.*, 89 Wis. 2d 130, 277 N.W.2d 863 (1979), the court found that the insurer was prejudiced as a matter of law because notice was not given to the insurer until 22 months after the suit had commenced. The trial had already been completed, and the court held that the 22-month delay in providing notice was noncompliance with the policy provisions as a matter of law. The court stated that an insurer cannot make a reasoned judgment as to its duty to defend or provide coverage until it has an opportunity to examine and review the factual situation and the pleadings as they relate to the terms of the insurance policy. The court stated that an insured does not have the authority to attempt to determine whether a policy covers an action, and thus, this decision rests with the insurer, and that as a result of the insured's belated notice, the insurer had been denied the opportunity to investigate or defend the claim or the opportunity to participate in any decisions regarding settlement of the claim.

HBI claims that upon receipt of the amended charge, it notified its attorney and that since its attorney was not entitled to any pretrial discovery to determine and evaluate the evidence, HBI was unable to determine whether the umbrella policy was affected until the NLRB hearing in December 1992. It argues that Great West's access to evidence would have been equally as limited and that even if Great West had been notified earlier, it would not have been able to evaluate the claim until the December 1992 hearing. HBI asserts that Great West received notification of the claim at the earliest possible time and that, therefore, there is no evidence that Great West was in fact prejudiced by HBI's actions.

To support its position, HBI notes that Great West's claims representative admitted that he denied coverage without knowing whether Great West had actually been prejudiced by the lack of timely notice. The claims representative stated that he had no opinion regarding whether Great West could have settled the case on more favorable terms and that he had no opinion

regarding the skill of HBI's attorney or the manner in which the case was settled and admitted that he had no experience in dealing with NLRB actions.

The trial court found that Great West received notice of the claim 4 years after the facts began to develop; 3 years after the Sharon, Pennsylvania, terminal was closed; and 18 months after HBI received the amended charge and the complaint. The trial court determined that, at the latest, the date of the occurrence was April 1991. It also determined that in December 1992, when HBI notified Great West of the claim, HBI had already reached a tentative settlement agreement with the Union for $290,000 and that payment of such settlement was to be made before January 1, 1993.

Based upon the undisputed facts in this case, we conclude that Great West was not given an opportunity to meaningfully protect its interests, and therefore, Great West was prejudiced as a matter of law. Great West did not know of, attend, or participate in the three NLRB hearings conducted on this matter and, thus, did not witness the presentation of evidence or communicate with representatives of the Union. Great West was not informed that settlement negotiations were being conducted, nor was it afforded an opportunity to participate in such negotiations.

HBI argues that Great West could have modified the settlement agreement between HBI and the Union and that this fact illustrates that Great West was given an opportunity to participate in the settlement. We are unpersuaded by this argument. Great West was not informed of the tentative settlement until late December 1992, even though HBI demanded payment before January 1, 1993. Giving Great West less than 1 week to investigate the claim, decide whether it was obligated to provide coverage, and then tender payment of $280,000 does not amount to granting Great West an opportunity to participate in the settlement. Thus, the long delay in giving notice coupled with the short time given in which to respond to the demand for payment of the claim denied Great West the opportunity to investigate the claim. Great West was not given a meaningful opportunity to investigate, defend, or participate in any of the decisions regarding the claim and was therefore prejudiced as a matter of law by HBI's lack of timely notice. Summary judg-

ment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Chalupa v. Chalupa*, 254 Neb. 59, 574 N.W.2d 509 (1998). The judgment of the trial court is affirmed.

AFFIRMED.

McCORMACK, J., not participating.