859 A.2d 353

**PRINCE GEORGE'S COUNTY**

v.

**LOCAL GOVERNMENT INSURANCE TRUST.**

No. 1768, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Oct. 8, 2004.

472

Geoffrey S. Gavett (Rhoda S. Barish, Gavett and Datt, PC, on the brief), Rockville, for appellant.

Jefferson L. Blomquist (Peter C. Ismay, Funk & Bolton, PA, on the brief), Baltimore, for appellee.

Panel: KENNEY, DEBORAH S. EYLER and KRAUSER, JJ.

**474**

KRAUSER, Judge.

We are asked to resolve an insurance coverage dispute between appellant, Prince George's County (the "County"), and its excess liability insurer, appellee, Local Government Insurance Trust (the "Trust" or "LGIT").[1] They disagree as to whether the County is entitled to indemnification from the Trust for a judgment it paid, following a jury trial, to Freddie McCollum, Jr.[2] for injuries he received at the hands of the Prince George's County police. This dispute arose when the Trust denied the County's request for indemnification, asserting that the County had violated the terms of its excess liability policy, by, among other things, failing to notify the Trust of McCollum's claim before a verdict was rendered. That, in turn, prompted the County to file, in the Circuit Court for Prince George's County, the lawsuit that is now before us.

In the complaint initiating that suit, the County alleged that it was the Trust, not it, that had violated the policy, and that the Trust had done so by denying the County the coverage for which it had contracted. To vindicate its rights, the County requested a declaration, stating that it was "entitled to liability insurance coverage and indemnity with respect to the *McCollum* action" as well as "a judgment against defendant, LGIT, for all amounts paid in the *McCollum* [case] covered under the LGIT policy, including post judgment interest and attorneys' fees" and related expenses. Cross motions for summary judgment followed.

---

1. As described in appellee's brief, "[t]he Local Government Insurance Trust ("LGIT") is a non-profit association of approximately 163 Maryland local governments, the Maryland Municipal League ("MML") and the Maryland Association of Counties ("MACo") . . . that have contributed funds to risk sharing pools in order to provide a lower cost alternative to conventional insurance coverage pursuant to the authority granted under Sections 19–601 *et seq.* of the Insurance Article." It is "governed by a Board of Trustees[,] . . . which is composed of a cross section of municipal and county Members and a representative from MACo and MML."

2. McCollum's wife and daughter were also parties to the suit.

Denying the County's motion but granting the Trust's, the circuit court ruled that the County was "not entitled to indemnity" from the Trust because it had "fail[ed] to give" the Trust the notice required by the policy. From that judgment, the County noted this appeal, presenting three issues. Reordered, but otherwise presented as they appear in appellant's brief, they are:

I. Whether the trial court erred in finding that the County's claim was barred under the Commercial General Liability Policy because the County failed to comply with notice provisions of the policy.

II. Whether the trial court erred in finding that the underlying claim did not constitute an "Occurrence" under the terms of the Commercial General Liability Policy issued by the Trust to Prince George's County.

III. Whether the trial court erred in failing to find that the underlying claim asserted a claim of "Personal Injury" caused by an "Offense" as defined by the Commercial General Liability Policy issued by LGIT to the County.

Because we conclude that the circuit court was correct in holding that the County's failure to comply with the notice provisions of the parties' policy barred its claim against the Trust, we shall affirm the judgment of the circuit court without reaching issues II and III.

### The McCollum Suit

On June 28, 1997, Officer Robert McDaniel, a Prince George's County police officer, attempted to pull over fifty-year-old Freddie McCollum, Jr. for failing to display a tag on the front of his vehicle. It is at this point that the incident, which resulted in McCollum's lawsuit, began, and the parties' agreement as to what occurred ends. At trial, the parties predictably presented two distinctly different versions of what followed.

But, for our purposes, we need not delve deeply into what occurred that day. Suffice it to say that, as a result of the fracas that ensued, McCollum suffered substantial and perma-

nent injuries, including the loss of his right eye. Although ultimately convicted of two minor traffic infractions,[3] he was acquitted of the principal charges that were subsequently lodged against him: assault and resisting arrest.

After those criminal proceedings ended, McCollum, his wife, and his daughter brought suit against the County and three County police officers in the United States District Court for the District of Maryland for assault, battery, false arrest, malicious prosecution, and violations of both federal and state civil rights acts. The suit alleged that, when the officers committed the foregoing torts, they were acting within the scope of their employment and that the County was therefore vicariously liable for their acts as well as for negligently hiring and retaining them as police officers.

The jury found in favor of McCollum and awarded him over $4.1 million in damages: $1 for the officers' wrongful entry into McCollum's home, $67,670 for medical expenses, $145,000 for McCollum's lost earning capacity, $3.5 million in non-economic damages, and $400,000 in punitive damages. Granting appellants' request for remittitur, the district court reduced the non-economic damages award from $3.5 million to $1.25 million in damages and the punitive award from $400,000 to $135,000 in damages. When the remittitur was accepted by McCollum, the court entered judgment against the officers and County in the total amount of $1,597,670. From that judgment, the officers and the County noted an appeal to the United States Court of Appeals for the Fourth Circuit. When, in an unreported opinion, the Fourth Circuit affirmed the judgment, *see McCollum v. McDaniel,* No. 01–1578, 2002 WL 451789 (4th Cir. March 25, 2002), the County paid the judgment and sought indemnification of all monies over $1 million, the amount of its self-insurance.

---

**3.** He was convicted of displaying an improper registration plate, in violation of Md.Code (1977, 2002 Repl.Vol.), § 13–411(g) of the Transportation Article ("Transp."), and fleeing on foot, in violation of Transp. § 21–904(c).

## The Coverage Dispute

From July 1, 1996, through July 1, 1998, the Trust provided the County with excess liability insurance. Under the policy[4] providing that coverage, the Trust covered the County, which was self-insured for $1 million, with coverage for losses that exceeded the limits of its self-insurance up to $5 million.

The policy provided coverage for four types of liability; only three of which are relevant to this case: Commercial General Liability, Police Legal Liability, and Public Officials Legal Liability. Although the policy provided Police Legal Liability coverage and Public Officials Liability coverage on a "claims-made" basis, its provision of Commercial General Liability coverage was "occurrence-based." That meant that while the Police Legal Liability and Public Officials Legal Liability did not cover claims after the termination of the policy, Commercial General Liability did, provided that the injury occurred before the policy expired.

The policy consisted of three documents: the Declaration Page, the Excess Liability Scope of Coverage ("Scope of Coverage"), and the Self–Insurance Excess Coverage Endorsement ("Endorsement"). Of those three documents, only two are relevant to this controversy: the Scope of Coverage and the Endorsement.

The Scope of Coverage required the County to "see to it that the Trust is notified promptly of an Occurrence, Wrongful Act or Accident, which is likely to create an obligation under this Scope of Coverage." It further required that, "[i]f a Claim is made or Lawsuit is brought against any Insured, the Named Insured must see to it that the Trust receives prompt written notice of the Claim or Lawsuit." And finally, it required the County to, among other things, "immediately" send the Trust "copies of any demands ... or legal papers in connection with a Claim or Lawsuit."

---

4. The County had two successive one-year term policies. For purposes of this appeal, the policies contained identical provisions, and, therefore, we shall refer to them as one policy.

The Endorsement, on the other hand, required the County to report certain "Losses" within "sixty (60) days" days of learning of them. These "Losses" ranged from specific types of injuries to violations of "federal and Maryland State civil rights statutes."

Although the County never notified the Trust of McCollum's claim or his lawsuit before verdict was rendered, as required by the Scope of Coverage, it did notify the Trust of the verdict or "Loss", as required by the Endorsement. After receiving notice of the claim, the Trust denied coverage and refused to indemnify the County.

Following the Trust's denial of the claim, the County filed suit in the Circuit Court for Prince George's County, alleging breach of contract and seeking a declaratory judgment that the Trust had a duty to reimburse the County for sums paid in excess of $1 million to satisfy the *McCollum* judgment. Although the County conceded that coverage would not be afforded under the Police Legal Liability or Public Official Liability provisions of the policy, the County maintained that officers' use of excessive force was an "occurrence," and therefore, it was covered under the Commercial General Liability portion of the policy.

At the time the County filed its complaint, it also filed a motion for summary judgment. In response to that motion, the Trust filed a "Motion to Strike or Opposition to Summary Judgment and Cross–Motion for Summary Judgment." Following a hearing on those motions, the circuit court concluded that "[t]he County breached its duty under the policy by failing to give LGIT requisite notice of the claim against the County as provided in the express terms of the policy." Moreover, notwithstanding this breach, the circuit court ruled that McCollum's injuries "were not the result of an occurrence." Therefore, the court found that the claim did not fall within the terms of the Commercial General Liability coverage. Having made those findings, the circuit court concluded that "the County [was] not entitled to indemnity from LGIT under the County's excess claims liability coverage policy for

the damages paid by the County in the *McCollum* suit" and granted summary judgment in favor of the Trust.

## Discussion

The County renews the claim that it made below: that the Trust had no right to deny it coverage for failing to comply with what it claims are two different and conflicting notice provisions in the policy. Specifically, it claims that the notice requirements in the Scope of Coverage, with which it did not comply, conflicted with those in the Endorsement, with which it did. Thus, according to the County, the circuit court erred in granting summary in favor of the Trust on that ground, among others.

Because this matter comes before us from the grant of a motion for summary judgment, we must affirm the judgment granted unless we find either that there was a "genuine dispute as to any material fact" or that the moving party, in this instance the Trust, was not "entitled to judgment as a matter of law." Md. Rule 2–501. Since the County does not contend that there was a genuine issue of material fact but only that the circuit court erred in misconstruing the notice provisions of the policy at issue, our review of this matter begins and ends with the terms of that policy.

" 'An insurance contract,' " we note, " 'like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby.' " *Chantel Assocs. v. Mt. Vernon Fire Ins. Co.*, 338 Md. 131, 142, 656 A.2d 779 (1995) (quoting *Pacific Indem. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486 (1985)). And, "[w]henever possible, each clause, sentence, or provision [in an insurance policy] shall be given force and effect," *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md.App. 72, 96, 699 A.2d 482 (1997), and construed in such a manner as to create a harmonious and coherent whole. That, of course, includes the policy and any endorsement thereto. But when that is not possible and "there is a conflict" between the main policy and an endorsement to the policy, "the endorsement controls...."

*Bausch & Lomb Inc. v. Utica Mut. Ins.* Co., 355 Md. 566, 583, 735 A.2d 1081 (1999). And that is precisely what the County would have us find here—a conflict between the notice requirements of the Scope of Coverage and the Endorsement leading inexorably to the conclusion that the notice requirements of the Endorsement control. *See id.*

But we find otherwise. An inspection of those documents discloses that, contrary to the County's claim, the Scope of Coverage and the Endorsement portions of the policy were not in conflict with one another. The Scope of Coverage included a subsection entitled "Insured's Duties," which outlined the duties of the insured if an event occurs "which is likely to create an obligation under th[e] Scope of Coverage," or if "a claim is made or a Lawsuit is brought against" the insured. That subsection began with the warning: "Failure to comply with the provisions of this Scope of Coverage may result in the Trust's denying coverage with respect to such Claim or Lawsuit." It then stated:

1. The insured must see to it that the Trust is notified promptly of an Occurrence, Wrongful Act or Accident, which is likely to create an obligation under this Scope of Coverage. Notice shall include:

   a. How, when and where the Occurrence, Wrongful Act or Accident took place; and

   b. The names and addresses of any injured person and witnesses.

2. If a Claim is made or Lawsuit is brought against any Insured, the Named Insured must see to it that the Trust receives prompt written notice of the Claim or Lawsuit.

3. With respect to a Claim or Lawsuit of which the Trust has been notified, an Insured shall:

   a. Immediately send the Trust copies of any demands, notices, summonses or legal papers received in connection with a Claim or Lawsuit;

   b. Authorize the Trust to obtain records and other information;

c. Cooperate with the Trust in the investigation, settlement or defense of the Claim or lawsuit; and

d. Assist the Trust, upon the Trust's request, in the enforcement of any right against any person or organization which may be liable to the Insured for a Loss.

While admitting that it failed to comply with the foregoing subsection of the Scope of Coverage, the County excuses that failure by claiming that the notice requirements of the Scope of Coverage conflicted with the notice requirements of the Endorsement, with which it did comply. The Endorsement contained the following "Condition," entitled "Claim Reporting," which stated:

The Insured shall be responsible for the investigation, settlement and defense of any Claim made or Lawsuit brought against the Insured. Within sixty (60) days of gaining actual knowledge thereof, the Insured must report the following Losses to the Trust:

1. *Claims reserved at $100,000 or more;*

2. All fatalities;

3. All real or suspected major paralytic conditions;

4. All second or third degree burns to 25% or more of the body;

5. All amputation and or permanent loss of use or sensation of a major extremity;

6. All head/brain injuries;

7. *Loss of sight and/or hearing;*

8. All spine/back injuries;

9. *All violations of civil rights protected under those federal or Maryland State civil rights statutes.*

(Emphasis added).

That Condition further required that

[t]he Insured, when reporting a Claim, shall promptly furnish the Trust with copies of accident and investigation reports, demands, summonses or other legal papers received in connection with a Claim. The Insured shall also, at the Trust's request, provide the Trust or its designated

representatives with complete access to Claim files and all documents for any reported Claim. The Insured shall provide the Trust with quarterly reports on the status of each reported Claim including the Insured's most recent loss reserve value for each Claim.

"Claim" was defined in the Endorsement as follows:

*Claim* means the direct or indirect assertion of any legal right alleging liability or responsibility on the part of an Insured arising out of an Occurrence or Wrongful Act and shall include (i) a Lawsuit filed by a claimant or a representative of a claimant, (ii) a demand letter from a claimant or a representative of a claimant or (iii) any other written communication from a claimant or a representative of a claimant. The term "Claim" does not include any assertion of liability or responsibility by a government agency or body, including an administrative complaint, notice of violation, notice or demand letter, administrative or executive order, or directive of any government agency of body.

"Loss," the County points out, was not defined in the Endorsement but was defined in the Scope of Coverage as "all sums actually paid or sums which the Insured is legally obligated to pay in the settlement or satisfaction of Claim to which this Scope of Coverage applies. . . ." Relying upon that definition, the County argues that, unlike the Scope of Coverage, the Endorsement only required notification of a loss after one had actually been suffered, or, in other words, as in this case, after the verdict had been rendered. Thus, the County claims, the notice requirements in the Scope of Coverage were "in obvious conflict" with those in the Endorsement. And, as the County correctly points out, when such a conflict exists, the endorsement controls. *See Bausch & Lomb Inc.*, 355 Md. at 583, 735 A.2d 1081.

But, as we have stated earlier, there was no conflict between those two documents. The notice requirements of the Endorsement were not at variance with the notice requirements of the Scope of Coverage. The "Insured's Duties," as set forth in the Scope of Coverage, required that, when "a

Claim is made or Lawsuit is brought against any Insured, the Named Insured must see to it that the Trust receives prompt written notice of the Claim or Lawsuit." That provision required that the Trust be given notice of a potential claim. The Endorsement language, cited by the County, simply addressed notice at a later stage; it required that the Trust be notified of losses the County actually suffered and delineated the procedures for reporting those losses.

In short, the two notice provisions served a similar purpose at two different stages of a claim. Rather than in conflict, they were complementary provisions: each re-inforced the requirements of the other as the claim passed from origination to disposition. In the well-chosen words of the Trust, the two provisions "functioned like a belt and suspenders," ensuring "that a Member that self-insured its primary liability exposure understood its obligation to promptly notify [the Trust] of any demand or lawsuit with any potential to trigger exposure under the Excess Liability Pool." Consequently, the failure of the County to notify the Trust promptly of McCollum's claim and then his lawsuit, and its concomitant failure to provide the information and assistance required by the Scope of Coverage, constituted a breach of the policy.

Furthermore, although "Loss" was defined in the Scope of Coverage as "all sums ... the Insured is legally obligated to pay," applying that definition to enumerated losses in the Endorsement, as the County exhorts us to do, runs afoul of basic rules of contract construction: that " 'insurance policies, like other contracts, are construed as a whole to determine the parties' intentions,' " *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 640, 679 A.2d 540 (1996)(quoting *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 508, 667 A.2d 617(1995)) and that, "whenever possible, each clause, sentence, or provision [in insurance policy] shall be given force and effect." *Empire Fire & Marine Ins. Co.*, 117 Md.App. at 96, 699 A.2d 482.

Indeed, to adopt the County's construction of the Endorsement would require us to ignore the overall purpose of the notice requirements of that document, which was to ensure

that the County inform the Trust of any claim or lawsuit potentially involving excess coverage so that it could, in the words of the Trust, "coordinate and cooperate with the County in the investigation, settlement, defense and trial of such claim or lawsuit." Moreover, the Losses, which the Endorsement requires the County to report, are listed under a subsection entitled: "Claim Reporting," indicating that the County had "[w]ithin sixty (60) days of gaining actual knowledge" of a claim—not a judgment—to report it to the Trust.

Furthermore, it would have served little purpose to enumerate the claims that required such prompt reporting, as the "Claim Reporting" subsection did, if the County was not obligated to report a claim until after that claim had resulted in a judgment. Nor would it make any sense to require the County, as that subsection also did, to "provide the Trust with quarterly reports on the status of reported Claim," if the reporting of such claim could await judgment.

■ Concluding, as we do, that the County did indeed breach its excess coverage policy does not, however, fully resolve the question of indemnification. A breach, standing alone, was not enough to permit the Trust to deny coverage. To have prevailed in this dispute, the Trust must also have established that it was prejudiced by that breach. As Maryland Code (1997, 2002 Repl.Vol.) § 19–110 of the Insurance Article ("INS") provides:

> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

■■ In short, "[a]n insurer may not disclaim coverage for either lack of notice or failure to cooperate unless it demonstrates that the deficiency has resulted in actual prejudice to the insurer." *Allstate Ins. Co. v. State Farm Mut. Auto. Ins.*

*Co.,* 363 Md. 106, 122, 767 A.2d 831 (2001). Although the Trust is not an insurance company, it is nonetheless an "insurer," because that term, under the Insurance Article, "includes each person engaged as indemnitor, surety, or contractor in the business of entering into insurance contracts." INS. § 1–101(v). Because the Trust is "engaged in the business of entering into insurance contracts," INS § 1–101(v), it falls within the ambit of § 19–110 and, therefore, must establish "by a preponderance of the evidence" that it suffered "actual prejudice" as a result of the County's failure to give the required notice. INS § 19–110.

█ But showing "actual prejudice" does not require the insurer to "prov[e] a negative." *Washington v. Fed. Kemper Ins. Co.,* 60 Md.App. 288, 295–96, 482 A.2d 503 (1984). In other words, the insurer is not required "to demonstrate to the court what witnesses it might have discovered, what defense it might have made, and what disposition it might have reached in settlement if it had received notice before the verdict. . . ." *Id.* Rather, "[i]n such cases where the insurer has been deprived of all opportunity to defend, the mere entry of the adverse judgment is affirmative evidence of actual prejudice to the insurer." *Id.* at 296, 482 A.2d 503.

█ The County argues, however, that because it, not the Trust, had the duty to defend the *McCollum* lawsuit, the Trust was not prejudiced by its untimely notice. We disagree. Although Maryland's appellate courts have not addressed this precise issue,[5] other state courts have. Those courts have held that an excess liability insurer is prejudiced as a matter

---

**5.** We note, however, that this Court has held that a trial court was not clearly erroneous in finding that a *primary* insurer was prejudiced when the insured failed to notify it of a lawsuit until after the verdict. *See Washington,* 60 Md.App. at 297, 482 A.2d 503. That case, however, is inapposite. First, that case involved the primary insurer's duty to defend, whereas in this case, the Trust has no duty, nor right, to defend the lawsuit against the County. Second, that case involved the trial court's granting of a declaratory judgment in favor of the insured. Therefore, our review was restricted to determining whether the court's finding of prejudice was clearly erroneous, not whether the insured suffered prejudice as a matter of law.

of law when the insured fails to notify the insurer of a lawsuit until after trial. *See, e.g., Kerr v. Ill. Cent. R.R. Co.,* 283 Ill.App.3d 574, 219 Ill.Dec. 81, 670 N.E.2d 759 (1996)(Excess liability insurer was prejudiced as a matter of law when the insured failed to notify the insurer of the lawsuit until after an appellate court remanded the suit to the trial court for a determination of damages.); *Allstate Ins. Co. v. Kepchar,* 592 N.E.2d 694 (Ind.Ct.App.1992)(Excess liability insurer was prejudiced as a matter of law when the insured failed to notify the insurer of the lawsuit until one year after trial.). And some state courts have taken it a step further, holding that an excess insurer is prejudiced as a matter of law when the insured notifies it of a claim only a few weeks before trial. *See, e.g., Highlands Ins. Co. v. Lewis Rail Serv. Co.,* 10 F.3d 1247 (7th Cir.1993)(Excess liability insurer was prejudiced as a matter of law when it was notified of a lawsuit only six weeks before trial.); *Greyhound Corp. v. Excess Ins. Co.,* 233 F.2d 630 (5th Cir.1956)(Excess liability insurer was prejudiced as a matter of law when it was notified of a lawsuit only three weeks before trial.). *C.f. Herman Bros., Inc. v. Great West Cas. Co.,* 255 Neb. 88, 582 N.W.2d 328 (1998)(Excess liability insurer was prejudiced as a matter of law when the insured notified it of a claim after it had entered a tentative settlement agreement and less than one week before payment of the settlement was to be made.).

The conclusion reached by these courts is sound. Even though an excess liability insurer generally "does not reserve the right to participate in the defense of a claim" against the insured, that, as the Appellate Court of Illinois put it, "is not tantamount to a surrender ... of its right to protect its own interests." *Kerr,* 219 Ill.Dec. 81, 670 N.E.2d at 765. In the words of that court, "[a]n excess insurer should not be forced to rely on its insured or the primary insurer to protect its interests where timely notice would provide the excess insurer with an opportunity to pursue its own investigation." *Id.; see also Herman Bros., Inc.,* 582 N.W.2d at 335 (Excess insurer, who was not notified of the insured's claim until after the insured had attended administrative hearings and conducted

settlement negotiations, "was not given an opportunity to meaningfully protect its interests, and therefore, ... was prejudiced as a matter of law.").

McCollum sought over $20 million in damages for his injuries. Given the accusations in the complaint and the severity of McCollum's injuries, there was a significant possibility that the verdict in favor of McCollum might exceed $1 million; in which event the Trust would be required to provide excess coverage. Facing the prospect of paying a potentially large claim, the Trust could have taken action that might have lessened or even eliminated its loss. It could have, among other things, conducted its own investigation of the incident, recommended different defense strategies, and encouraged settlement. *See Atlanta Int'l Ins. Co. v. Yellow Cab Co.,* 972 F.2d 751, 752 (7th Cir.1992)("[T]he insured did not notify the excess insurer until after the jury had returned a verdict over the primary policy limits, thereby depriving the excess insurer of any opportunity to conduct its own investigation and, perhaps, settle for a lower amount.").

The Trust, in fact, contends that there were deficiencies in the County's defense strategy, primarily, its refusal to engage in settlement negotiations and its insistence on denying liability and proceeding to trial. But having not received notice of the *McCollum* lawsuit until after the verdict, the Trust lost the opportunity to attempt to correct those deficiencies and was reduced to relying solely on the County to protect its interests. These facts are not disputed and they establish, as a matter of law, that the Trust was prejudiced by the County's untimely notification of the *McCollum* lawsuit. The circuit court therefore did not err in granting summary judgment in favor of the Trust.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**