MASTER ET AL. *v.* MASTER

[No. 86, September Term, 1960.]

*Decided December 14, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Harry L. Durity,* for appellants.

Submitted on brief by *Jerrold V. Powers* and *Sasscer, Clagett & Powers,* for appellee.

HAMMOND, J., delivered the opinion of the Court.

Sarah Master, estranged from her husband, Leo Master, filed an original bill to set aside, as vitiated by fraud, a decree foreclosing rights of redemption after a tax sale. By the decree title to some forty-five acres of land near Washington, formerly in the couple as tenants by the entirety, had become vested in Naples Bay Shores, Inc., a corporation in which the husband was president and treasurer. The chancellor, characterizing the husband's efforts as "an extremely clever means of dissolving a tenancy by the entirety," granted the relief prayed, and the husband and the corporation have appealed.

The couple were married in 1939, and in 1944 acquired some twenty-six acres of land in Prince George's County. In 1945 they bought three contiguous parcels aggregating about seventeen and three-quarter acres. The wife furnished the cash purchase price of the first parcel and the down payment on the second. Title to all the parcels was taken as tenants by the entirety. The couple and their three children moved into a house on the property known as 7701 Walker Mill Road, District Heights, Prince George's County, on which the family has continued to make its home. The couple have not lived together as husband and wife since some time in 1957, although each continues to reside on the property, on which are several houses.

On April 1, 1959, a county tax assessor, visiting the property in the course of his duties, happened to remark to the wife that it now belonged to Naples Bay Shores, Inc. As a result, the wife consulted a lawyer that same day. A week later her bill of complaint was filed on the basis of the lawyer's investigation which had disclosed to her for the first time the following: In March 1955 all of the property held by the couple as tenants by the entirety was sold by the treasurer of Prince George's County to Naples Bay Shores, Inc., for $225.00, for delinquent taxes for the year 1954. In March 1957 Naples had filed its bill to foreclose all rights of redemption in the property. The husband and wife had been sued as residents of Maryland on whom subpoenas were to be served at their residence at 7701 Walker Mill Road. Mortgagees living in Washington, and other possibly interested unknown individuals, were proceeded against by publication. The record in the foreclosure of redemption case includes a summons to the husband and wife, on which the deputy sheriff endorsed a statement that he served both of the parties named in the summons on March 11, 1957, at 2:30 P. M.

Thereafter Naples obtained a decree *pro confesso* in which the court noted it appeared that "two of the defendants Leo A. Master and Sarah F. Master, his wife, were duly served with subpoenas by the Sheriff and returned on March 11, 1957," and that service had been had on certain other defendants by publication and no defendant had answered. By the final decree of October 10, 1958, Naples was vested with fee simple title to the property "free and clear of all alienations and descents of the said properties and encumbrances thereon occurring prior to this decree * * *."

On October 17, 1958, the treasurer of Prince George's County, pursuant to the direction of the decree, executed and delivered a deed of the properties in fee simple to Naples. On February 9, 1959, Naples, acting through the husband as its president, encumbered part of the property by a deed of trust securing repayment of a loan made to it by the Perpetual Building Association in the sum of $10,000. Except for this deed of trust, none of the property has been encumbered or alienated, record title to all of it remaining in Naples.

The property was assessed for taxes at $20,750 but the wife put a value on it of at least $3,000 an acre for the forty-four and three-quarter acres.

The wife testified that she had never been served with a summons or any other paper by the deputy sheriff or anyone else and had not known of the tax sale, or of the foreclosure or of the deed to Naples or the deed of trust until her lawyer told her in April 1959 after the visit of the tax assessor. She said that on March 11, 1957, at 2:30 P. M., when she was supposed to have been summoned, she was at work as a beauty operator in a department store in Washington. The assistant payroll supervisor of the store testified that the company's records showed that the wife had been at work during the entire week of March 11, 1957, and that she had been paid for that entire week. When the husband testified, he did not claim that his wife had in fact been summoned, although the sheriff's return indicated that he and she had been summoned by the deputy sheriff at the same place and time.

The wife and two of the daughters of the couple testified that one evening (which the chancellor could have found, as he seemingly did, to have been when the property was advertised for sale for non-payment of taxes in 1955) her daughter told her mother that a school friend had that day shown her a newspaper clipping which advertised that the family property would be sold for non-payment of delinquent taxes. In the presence of the daughters the mother told the father, who said it was a mistake, that it must have been printed by mistake, that the taxes had already been paid and that he would look into it. The wife also testified Naples had never attempted to get her off the property.

The husband did not deny what his wife and two daughters had testified to, indeed, did not even refer to it. He testified only to the formation of Naples, his connection with it, its purchase at the tax sale (its first business transaction in Maryland—it had bought two parcels of land in Florida for investment and later sold one of them), that he suggested the purchase, that he had engaged the lawyers who filed the foreclosure of redemption proceedings, that he and the vice-president of the corporation attended the sale, that he knew the sale

divested him and his wife of title to the property, that he signed the corporation check for the purchase price and that he personally did not have the money to redeem the property.

Appellants do no more than snipe at the wife's right to seek relief by an original bill to vacate an enrolled decree for fraud, apparently recognizing that at least since *Burch v. Scott*, 1 Bland 112, this Court has held such a procedure proper. See also *Bachrach v. Washington United Coop.*, 181 Md. 315, 320; *Falck v. Chadwick*, 190 Md. 461, 466; *Pugh v. Waclawski*, 211 Md. 346, 350. In *Thomas v. Hardisty*, 217 Md. 523, an original bill to vacate a tax sale and cancel the collector's deed conveying the property sold was sustained.

Appellants' main fire is directed to contentions that the wife was incompetent to testify that the husband had said the taxes were paid; that she did not show she had not been summoned; that even if she had not been summoned the order of publication gave her constructive notice of the foreclosure case; that the evidence of fraud was insufficient; that the chancellor should have declared Naples' rights under the foreclosure decree and, finally, that the lender of the $10,000 to Naples was a necessary party.

Appellants hark back to the common law rule that neither party to a marriage can testify against the other in a suit to which that other is a party. They concede that Code (1957), Art. 35, Sec. 1, now makes spouses competent to testify, but rely on the qualification of Section 4 of Article 35, that "in no case, civil or criminal, shall any husband or wife be competent to disclose any confidential communication made by the one to the other during the marriage * * *," urging that it is applicable to the wife's testimony. We find nothing confidential in the challenged communication of the husband to the wife. It was made in the presence of children old enough to understand fully what was being said and it related to a matter of property in which the husband was purportedly acting not only in his own but in his wife's interests. Such a conversation has been recognized as not confidential. *McCormick on Evidence*, Sec. 84. See also 3 *Jones on Evidence* (5th Ed. 1958), Sec. 819, p. 1536, where it is said: "Where the statute excludes private communications between husband

and wife, conversations in the hearing of third persons may be testified to by husband or wife." Even if there had been error in the admission of the wife's testimony, it could hardly be held prejudicial since the same conversation was testified to by the two daughters.

Appellants earnestly urge that the wife did not meet her burden of overcoming the *prima facie* correctness of the sheriff's official return and so did not show she had not been summoned. We find that the wife's testimony that she was working in Washington on the day of the supposed service, corroborated as it was by the official records of her employer, and the failure of the husband to testify that she had been served, were enough to convince the trier of fact she had met her burden. See *Little v. Miller*, 220 Md. 309, 316; *Piedmont-Mt. Airy Guano Co. v. Merritt*, 154 Md. 226, 228, 229. In the latter case it was said: "But where the evidence convinces the court that the party disputing the return was not in fact summoned, and had not voluntarily appeared, its duty is to rescind the judgment entered in the exercise of a jurisdiction thus found to have been unwarrantably assumed."

The order of publication was in no way constructive notice to the wife. A proceeding to foreclose an equity of redemption in a tax sale is a proceeding *in rem* or *quasi in rem* and the Legislature, without affronting due process, could have provided that all interested parties, including residents, were to be brought before the court by publication. *Gathwright v. Baltimore*, 181 Md. 362; *James v. Zantzinger*, 202 Md. 109, 114. The Legislature, however, chose to require in Code (1957), Art. 81, Secs. 106 and 107, that residents of the State must be personally served by subpoenas and that only if there were returns of *non est* on two successive subpoenas against a named resident defendant, or one *non est* and an affidavit of evasion of service, could such a defendant be treated as a nonresident and served by publication. Since the wife was admittedly a resident, living at an address known to the complainants, and was not served, the court had neither the right nor the power to proceed against her interest in the property, and the order of publication was without effect as to it.

In *James v. Zantzinger*, and in *Thomas v. Hardisty*, 217

Md. 523, 530, both referred to above, this Court said: "The statutory requirements as to notice required to determine taxpayer's right to redeem from a tax sale are mandatory and must be strictly followed." See also *Brashears v. Collison,* 207 Md. 339.

Fraud must be made clearly to appear by satisfactorily convincing proof. *Boring v. Jungers,* 222 Md. 458. Here the sequence of events revealed by the record permitted the chancellor to find that the husband allowed the taxes to become in default and the property to be sold for taxes, that he falsely assured his wife that the taxes were not in default to lull her into security and inaction, that he had the property bought in by a corporation which he controlled, that he arranged to have filed a proceeding to foreclose the equity of redemption, that he had accepted service of process on behalf of his wife while concealing from her the fact that service had been attempted and from the court the fact that she had not been summoned, and that the result of these maneuvers was to divest the wife of title and vest it in an entity which would hold it for the husband. Proof of these facts and the failure of the husband to deny them was enough for the chancellor to deduce clear and convincing proof of his duplicity.

It is hardly necessary to expound the theory that one who deliberately and purposefully fails to serve a defendant and represents to the court that there had been such service, is guilty of fraud in the conduct of the proceedings and that this fraud invalidates a decree passed as a result of it. *Croyle v. Croyle,* 184 Md. 126, 134. Cf. *Margos v. Moroudas,* 184 Md. 362.[1]

---

1. Chancellor Bland said in Burch v. Scott, 1 Bland 112, 120: "It is the peculiar province of this Court to grant relief in all cases against fraud and accident, not within reach of the Courts of common law; and a decree obtained without making those parties, whose rights are affected by it, is, as to them, fraudulent." Story, Equity Pleading (10th Ed. 1892), Sec. 427, says that such action is fraudulent. See also Miller, Equity Procedure, Sec. 300, p. 370, note 4. However, in Brashears v. Collison, 207 Md. 339, where the complainant on the *bona fide* advice of counsel, did not think certain individuals were necessary parties and failed to join them in

Code (1957), Art. 81, Sec. 113, provides that no application can be entertained to reopen a decree foreclosing equities of redemption "except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose." We think the requirements of the statute were fully met by the proof in the present case.

Naples says that the court should have declared its rights under the decree in the foreclosure case. It is generally held that a cross-bill for declaratory judgment is permissible, provided it complies with the pleading requirements for declaratory relief generally. 26 C. J. S. *Declaratory Judgments,* Sec. 139. Naples did not here cross complain but merely included in its answer a final prayer in the following words: "* * * and prays that it may obtain a declaration of rights, status and other legal relations which it may have under said decree in accordance with the Uniform Declaratory Judgment Act * * *."

It has been held that more than a mere prayer for declaratory relief is required in a pleading if the jurisdiction of the court to declare rights and status is to be invoked. *Standard Oil Company of California v. Tide Water Associated Oil Company,* 55 F. Supp. 274, 276, affirmed 154 F. 2d 579 (C. C. A., 3rd). There is nothing to show that Naples ever pressed its prayer for declaratory relief. The decree appealed from divested it of title and the muniments of title, and to that extent its rights vis a vis the wife would seem to have been clearly declared. Any rights it may have in respect of monies paid out in connection with the property would be the subject of adjustment between it and the husband.

In *Meeker v. Baxter,* 83 F. 2d 183, 187, (C. C. A., 2d.), in speaking of a prayer for declaratory judgment included in an answer "apparently for good measure," Judge Learned Hand said for the Court the following: "When the parties as here have once locked horns and are demanding forcible sanctions, there is no longer room for judicial declarations sepa-

---

a tax sale foreclosure case, this Court held that fraud had not been established but that the court was without jurisdiction, and the decree ineffective as against those who should have been made parties.

rate from those which will be implicit or express in the final judgment or decree."

The point that the Perpetual Building Association, which lent Naples $10,000 on the properties involved, was a necessary party was neither raised nor passed on below, and under Maryland Rule 885 is not before us on appeal. *Reddick v. State,* 213 Md. 18, 31. The wife concedes expressly that the building association, not having been made a party, is not affected by the decree appealed from. She says in her brief: "The *bona fides* of its lien was recognized when this suit was brought, and appellee sought no relief against the lienholder. The decree in no way attempts to impair that lien, but merely provides, that *between the parties,* the interest of Leo A. Master in the property, 'to the extent of the full value thereof' should be responsible for the payment of the lien." The decree as so construed will be affirmed.

*Decree affirmed, with costs.*