893 A.2d 1177

**NATIONWIDE MUTUAL INSURANCE COMPANY**

**v.**

**Taylor F. WILSON.**

**No. 100, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

March 3, 2006.

528

Steven E. Leder (Julie F. Maloney, on brief), Baltimore, for appellant.

Peter J. Kozenewski, Westminster, for appellee.

Panel HOLLANDER, SALMON, KENNEY, JJ.

KENNEY, J.

Nationwide Mutual Insurance Company ("Nationwide") appeals the judgment of the Circuit Court for Carroll County, granting summary judgment in favor of Taylor Wilson. The circuit court found invalid the fellow employee exclusion in the Nationwide business automobile policy issued to Allegheny Industries, Inc. ("Allegheny"). The court declared that Nationwide had a duty to indemnify up to $1,000,000 for any liability arising from an accident that Daniel McFarland caused during the course of his employment with Allegheny. Nationwide presents one question for our review, which we have slightly reworded:

> Did the circuit court err by declaring invalid a "fellow employee exclusion" in Allegheny's commercial automobile policy, which reduces the amount of liability coverage under

the policy to the minimum amount permitted under Maryland's compulsory motor vehicle insurance statute?

For the following reasons, we hold that the fellow employee exclusion at issue is valid and enforceable.

## FACTUAL AND PROCEDURAL HISTORY

The material facts are undisputed. Allegheny, a Maryland corporation, performs general contracting work in the field of telecommunications. Its principal place of business is located in Carroll County, Maryland.

On the evening of June 19, 2002, Wilson and McFarland, both employees of Allegheny, were dispatched in a vehicle owned by Allegheny to perform maintenance work. While returning from the job in the early morning hours of June 20, 2002, McFarland, the driver, reportedly fell asleep, crossed the center line of the highway, and struck another vehicle head on. Wilson sustained severe injuries, including broken bones, cuts, and bruises. As a result of his injuries, he has undergone several operations, including two operations to remove more than ten feet of his small intestine. His medical expenses exceeded $100,000.

At the time of the accident, Allegheny maintained two insurance policies with Nationwide: a business automobile policy (the "Auto Policy") and a workers' compensation policy (the "Workers' Compensation Policy"). The amount of liability coverage under the Auto Policy was $1,000,000. The Auto Policy provided, in relevant part:

SECTION II–LIABILITY COVERAGE

A. Coverage.

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

\* \* \*

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense." However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. *Who is An Insured*

The following are "insureds":

 a. You for any covered "auto."

 b. Anyone else while using with your permission a covered "auto" you own, hire or borrow.

* * *

B. Exclusions

This insurance does not apply to any of the following:

* * *

5. Fellow Employee

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

A standard endorsement for Nationwide business automobile policies issued in Maryland was made part of the Auto Policy. The endorsement provided, in pertinent part:

With respect to coverage provided by this endorsement, the provisions of Coverage Form apply unless modified by the endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Maryland, the Coverage Form is changed as follows:

A. Changes in Liability Coverage

> Except with respect to the Business Auto Physical Damage Coverage Form, the Fellow Employee Exclusion is replaced by the following:
>
> This insurance does not apply to "bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the "fellow employee's" employment or while performing duties related to the conduct of your business.
>
> However, this exclusion does not apply for coverage up to the minimum limit specified by the Maryland Vehicle Law.

Wilson made demand upon McFarland and Nationwide, the insurer of the vehicle, for personal injury damages sustained as a result of the accident. Nationwide responded that, because Wilson was a fellow employee of McFarland and was injured in the course of employment, the "fellow employee" exclusion limited liability coverage under the policy to $20,000, the minimum amount of coverage required by Maryland Code (1977, 2002 Repl.Vol.), § 17–103(b) of the Transportation Article ("Trans."). Nationwide offered to settle with Wilson for $20,000 in exchange for a release of all claims.

On January 6, 2004, Wilson filed a complaint for declaratory judgment in the Circuit Court for Carroll County, naming Nationwide, Allegheny, and McFarland as defendants. In his complaint, he argued that the fellow employee exclusion was invalid under Maryland law and requested a declaratory judgment to that effect.

In his answer to Wilson's complaint, McFarland also asserted the invalidity under Maryland law of the fellow employee exclusion in the Auto Policy. Therefore, he requested that the court declare that Nationwide had both a duty to defend him in any action relating to the collision of June 20, 2002, and a duty to indemnify up to the full policy limit of $1,000,000 for any recovery due Wilson resulting from the collision.

Allegheny initially filed a motion to dismiss, but, after withdrawing that motion, it answered Wilson's complaint, asserting that the fellow employee exclusion was invalid. Ac-

cording to Allegheny, the court should issue a declaration imposing a duty on Nationwide to both defend Allegheny in any action relating to the June 20, 2002 collision and to indemnify Allegheny up to the full policy limit of $1,000,000. Neither McFarland nor Allegheny filed counterclaims seeking declaratory relief. Nationwide filed a timely answer and moved to dismiss the complaint.

On August 6, 2004, Wilson filed a motion for summary judgment. McFarland, in his response, requested that the court grant Wilson's motion. Allegheny also filed a counter-motion for summary judgment, asserting that Wilson's claim under Maryland's Workers' Compensation Act constituted his exclusive remedy against Allegheny. Allegheny, therefore, requested the court to deny Wilson's motion for summary judgment "and/or ... declare [Allegheny's] liability to [Wilson] consistent with Maryland Law and the terms and conditions of the automobile policy."

On September 10, 2004, Nationwide filed its own counter-motion for summary judgment. It requested that the court declare that the fellow employee exclusion in the Auto Policy was valid; that it had no duty under that policy to indemnify Allegheny in connection with any claim arising from the collision; and that its duty to indemnify McFarland was limited to $20,000.

On February 23, 2005, the circuit court, having determined that the material facts were undisputed, granted Wilson's motion for summary judgment. The court declared that the fellow employee exclusion was invalid as a matter of law and that Nationwide was obligated to fully indemnify Allegheny and McFarland "for any sums that Daniel Richard McFarland, as an employee of Allegheny Industries, Inc. becomes legally obligated to pay as a result of the accident that occurred June 20, 2002." Nationwide noted this timely appeal.[1]

---

1. The court issued a memorandum opinion and a separate document, declaring that the fellow employee provision in the Auto Policy was

## STANDARD OF REVIEW

Under Maryland Rule 2–501(f), a court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." We

invalid and that Nationwide had a duty to indemnify Allegheny and McFarland for any liability accruing to McFarland as a result of the June 20, 2002 accident. The document declaring the rights of the parties also ordered that Wilson's motion for summary judgment was granted. The court did not expressly deny Nationwide's counter-motion for summary judgment or address Allegheny's counter-motion for summary judgment.

In its counter-motion for summary judgment, Allegheny requested that the court declare that its sole liability to Wilson was under his workers' compensation claim. Allegheny did not, however, file a counterclaim for declaratory judgment. The counter-motion requested relief that was collateral to Wilson's pleading. *See Master v. Master,* 223 Md. 618, 626, 166 A.2d 251 (1960) (permitting the filing of "cross-bill[s] for declaratory judgment" and reasoning that "more than a prayer for declaratory relief is required in a pleading if the jurisdiction of the court to declare the rights and status is to be invoked"). The court's grant of Wilson's motion for summary judgment and its issuance of the declaratory judgment was an implied denial of the counter-motions for summary judgment and resolved the case. *See Goldman, Skeen & Wadler, P.A. v. Cooper, Beckman & Tuerk, L.L.P.,* 122 Md.App. 29, 61, 712 A.2d 1 (1998) ("In a declaratory judgment action, it is the court's duty to declare the respective legal rights of the parties, and it need not follow that the judgment must correspond to either party's view of the case.").

Wilson also noted a cross-appeal from the denial of attorneys' fees. Wilson did not request attorneys' fees in his initial complaint for declaratory judgment or in his initial motion for summary judgment. It appears, from our review of the record, that the first pleading raising the issue of attorneys' fees was Nationwide's "Response to Plaintiff's Reply Memorandum to Defendant's Opposition to Motion for Summary Judgment and Counter–Motion for Summary Judgment and Request for Hearing." Wilson did not raise the issue of attorneys' fees in his brief or at oral argument. In any event, Wilson was not entitled to attorneys' fees as a claimant. *See Nolt v. U.S. Fidelity & Guaranty, Co.,* 329 Md. 52, 67, 617 A.2d 578 (1993) (" '[T]he right of an insured to recover attorneys' fees in such a situation applies not only to the named insured of the policy but also to any person who is within the policy definition of an insured against whom a claim alleging a loss within the policy coverage has been filed.' ") (quoting *Bankers & Shippers Ins. Co. v. Electro Enters., Inc.,* 287 Md. 641, 648–49, 415 A.2d 278 (1980)). We

review "a trial court's grant of a motion for summary judgment *de novo.*" *Remsburg v. Montgomery,* 376 Md. 568, 579, 831 A.2d 18 (2003). *See also Todd v. Mass Trans. Admin.,* 373 Md. 149, 154, 816 A.2d 930 (2003); *Beyer v. Morgan State Univ.,* 369 Md. 335, 359, 800 A.2d 707 (2002); *Schmerling v. Injured Workers' Ins. Fund,* 368 Md. 434, 443, 795 A.2d 715 (2002).

 When reviewing a grant of summary judgment, we first determine whether a genuine dispute of material fact exists "and only where such dispute is absent will we proceed to review determinations of law." *Remsburg,* 376 Md. at 579, 831 A.2d 18. Moreover, "we construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party." *Id.* at 579–80, 831 A.2d 18. We generally " 'uphold the grant of a summary judgment only on the grounds relied on by the trial court.' " *Mitchell v. Baltimore Sun Co.,* 164 Md.App. 497, 508, 883 A.2d 1008 (2005) (quoting *Ashton v. Brown,* 339 Md. 70, 80, 660 A.2d 447 (1995)).

## DISCUSSION

Here, the sole issue is the validity of the "fellow employee" provision in the Auto Policy, expressly limiting liability coverage for fellow employee claimants injured during the course of employment to the minimum coverage permitted under Maryland's compulsory motor vehicle insurance statute. Nationwide contends that the provision is valid because the policy provides for the minimum amount of security for bodily injury and death required by Trans. § 17–103(b). It finds support for that contention in the fact that the Court of Appeals has upheld an automobile liability exclusion that limits the level of coverage available to a family member residing with the insured at the time of the accident to the statutorily mandated

---

are persuaded, therefore, that there is a final appealable judgment in the instant case.

level of liability coverage. *Stearman v. State Farm Mut. Auto. Ins. Co.,* 381 Md. 436, 849 A.2d 539 (2004).

Wilson argues that the exclusion at issue is indistinguishable from the fellow employee exclusion that was held to be invalid in *Larimore v. American Ins. Co.,* 314 Md. 617, 552 A.2d 889 (1989). Morever, he asserts that upholding the fellow employee exclusion would permit insurers to avoid indemnification despite an insured's payment of premiums for more than minimum coverage. This, he contends, subverts the public policy underlying Maryland's compulsory automobile insurance law.

Fellow employee exclusions are liability exclusions in automobile policies that are seen most often in commercial polices. *See* Andrew Janquitto, Maryland Motor Vehicle Insurance § 7.11(B), 234. (2d. ed.1999). Such exclusions are designed to prevent an employer from maintaining coverage for employees under both worker's compensation and business automobile insurance policies. Job A. Sandoval, *Construction and Application of Provision of Automobile Liability Policy Expressly Excluding From Coverage Liability Arising From Actions Between Fellow Employees,* 45 A.L.R.3d 288, § 3 (1972 & Supp.2004) (explaining that fellow employee exclusions seek to "relieve the employer of the onerous requirement of insuring his employees under his public liability insurance policy, such employees being already protected by the workmen's compensation statutes"). Prior to legislative enactment of mandatory automobile insurance coverage, fellow employee exclusions were upheld by federal courts applying Maryland law. *See, e.g., Bevans v. Liberty Mut. Ins. Co.,* 356 F.2d 577, 581 (4th Cir.1966) (interpreting Maryland law and reasoning that the fellow employee exclusion operates to preclude a fellow employee from recovery under general liability insurance in addition to worker's compensation).

In 1972, the General Assembly enacted legislation designed to assure that drivers operating motor vehicles on Maryland roads were financially responsible. *See* Trans. § 17–101–110; *Maryland Auto. Ins. Fund v. Perry,* 356 Md. 668, 741 A.2d

1114 (1999). The "legislative policy has the overall remedial purpose of protecting the public by assuring that operators and owners of motor vehicles are financially able to pay compensation for damages resulting from motor vehicle accidents." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Gartelman,* 288 Md. 151, 154, 416 A.2d 734 (1980). Under the statutory scheme, every vehicle, with certain limited exceptions not here applicable, must maintain personal injury liability coverage of at least "$20,000 for any one person and up to $40,000 for any two or more persons" and property damage coverage of at least $15,000. Trans. § 17–103(b)(1)–(2).

After the enactment of the compulsory liability insurance law, certain exclusions commonly found in automobile insurance policies that effectively excluded all liability coverage were held to violate public policy and declared invalid. *See, e.g., Salamon v. Progressive Classic Ins. Co.,* 379 Md. 301, 303, 841 A.2d 858 (2004) (holding that a "pizza exclusion," by which an insurer could deny coverage to an insured driver delivering property for compensation at the time of the accident, was void as against public policy); *Lee v. Wheeler,* 310 Md. 233, 237, 528 A.2d 912 (1987) (concluding that a "phantom vehicle exclusion," which excluded liability coverage to a Maryland insured in cases where there was no physical contact between the insured vehicle and the phantom vehicle, was invalid under Maryland law).

Among these exclusions that were held to violate the compulsory liability insurance law was the so-called "household exclusion," which excluded coverage for bodily injury sustained by the insured or any family member of the insured residing in the insured's household. The household exclusion sought to limit the potential for fraudulent or collusive claims being brought by members of the insured's household.

In *Jennings v. Gov't Employees Ins. Co.,* 302 Md. 352, 488 A.2d 166 (1985), the Court of Appeals determined that a household exclusion was inconsistent with Maryland's compulsory liability insurance law. It reasoned that, " '[b]ecause the stated purpose of the [compulsory liability insurance law] is to assure that a driver be insured to a minimum level, such an

exclusion provision contravenes the purpose and policy of the ... act.' " *Id.* at 362, 488 A.2d 166 (quoting *Bishop v. Allstate Ins. Co.*, 623 S.W.2d 865, 866 (Ky.1981)). The Court further explained that, ordinarily, where a statute provides for specific exclusions, others will not be permitted. In other words, if the legislature had intended to permit the exclusion from coverage of members of an insured's household, it would have created an express exception to the mandatory coverage provisions. *Id.* at 359–60, 488 A.2d 166. According to the Court, "if any and all exclusions from this required liability coverage are valid so long as they are not expressly prohibited by statute, the purpose of the compulsory automobile liability insurance could be frustrated to a significant extent." *Id.* at 360, 488 A.2d 166.

One year later, in *State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.*, 307 Md. 631, 516 A.2d 586 (1986), the Court of Appeals considered "[w]hether the 'household exclusion' [wa]s wholly invalid, or whether its invalidity extend[ed] only to the amount of the minimum liability coverage required by the compulsory insurance law." *Id.* at 633, 516 A.2d 586. Recognizing that the compulsory liability insurance statute created a floor rather than a ceiling to liability coverage, and relying upon the general principle that "[a] contractual provision that violates public policy is invalid, but only to the extent of the conflict between the stated public policy and the contractual provision," the Court determined that the household exclusion was a valid and enforceable contractual provision for limiting coverage above the statutory minimum. *Id.* at 643, 516 A.2d 586. The Court remarked:

Put simply, what the legislature has prohibited is liability coverage of less than the minimum amounts required by § 17–103(b)(1) of the Transportation Article.... The "household exclusion" violates public policy only to the extent it operates to prevent this mandatory minimum coverage.

*Id.* at 637, 516 A.2d 586.

Recently, in *Stearman v. State Farm Mut. Auto. Ins. Co.*, 381 Md. 436, 849 A.2d 539 (2004), the Court of Appeals again

considered the validity of the household exclusion. The policy in *Stearman* provided for general liability coverage up to $100,000, but limited coverage for bodily injury to the insured or any member of the insured's family residing in the insured's household, to "the limits of liability required by law." *Id.* at 440, 849 A.2d 539. The claimant argued that *State Farm* was "'limited to the facts of that case and is not a general validation of exclusions above statutory minimum requirements.'" *Id.* at 445, 849 A.2d 539. The *Stearman* Court acknowledged that "*State Farm* is not a 'general validation' of *any* exclusion above a statutory minimum ... it [is] quite clear that the case does validate *household* exclusions above those minimums." *Id.*

It was also argued in *Stearman* that Maryland Code (1997, 2002 Repl.Vol.), § 19–502(b) of the Insurance Article ("Ins.") demonstrated a legislative intent to require those insurance policies providing for liability coverage in excess of the statutory minimum to provide the same amount of coverage under all circumstances. Insurance § 19–502(b) provides:

> *On the amount of liability coverage provided by insurer.*— Neither this substitle nor Title 17 of the Transportation Article prevents an insurer from issuing, selling, or delivering motor vehicle liability insurance policies that provide liability coverage in excess of the requirements of the Maryland Vehicle Law.

The Court rejected the claimant's contention. Judge Greene, writing for a majority of the Court, explained:

> The plain language of the quoted section evidences an intention *to permit* insurance companies to offer policies that contain greater coverage than that required by statute. It certainly does not *require* insurance companies to provide coverage greater than that mandated by statute. Nor does it display a legislative intention to change the public policy embodied in the statutorily mandated minimum liability coverage requirements.

* * *

As we noted previously, the purpose of the Maryland compulsory insurance statutes is to " '[assure] recovery for innocent victims of motor vehicle accidents.' " Despite the allure of the idea of total compensation for any innocent victim of a motor vehicle accident, there is no indication that the General Assembly's purpose in enacting the compulsory insurance statutes was to assure *complete insurance* recovery for all victims. As we stated in *State Farm*, we "do not view that purpose as extending beyond the prescribed statutory minimum coverage, so far as the 'household exclusion' is concerned. Clearly, if the General Assembly had intended something closer to complete insurance recovery for all victims, they would have said so or increased the mandatory minimum liability limits."[2]

*Id.* at 448–450, 849 A.2d 539 (citations and footnotes omitted).

As the *Stearman* Court pointed out, had the General Assembly intended uniform coverage beyond the statutory limit for all victims it could have enacted legislation requiring such coverage. For example, the statutory provisions regulating uninsured/underinsured motorist coverage require, unless otherwise waived, that "the amount of uninsured motorist coverage provided under a private passenger motor vehicle liability insurance policy shall equal the amount of liability coverage provided under the policy." Ins. § 19–509(e)(2).

Conversely, the *Stearman* Court stated that, effective January 1, 2005, an insurer is required to *offer* a named insured under an automobile liability policy coverage for claims by a family member in the same amount as claims by non-family members. *Stearman*, 381 Md. at 456 n. 15, 849 A.2d 539 (citing 2004 Md. Laws, Chap. 127). Requiring only the offer of such coverage indicates that the General Assembly had considered the issue, but concluded that mandatory insurance coverage above the statutory minimum for all victims was not

---

2. The Court noted, for example, that full compensation to all victims of automobile accidents is required under Delaware law. *Id.* at 450 n. 9, 849 A.2d 539 (citing *Nationwide Gen. Ins. Co. v. Seeman*, 702 A.2d 915, 918 (Del.1997)).

necessarily in the public's interest and carried a potentially harmful financial impact in the form of increased insurance premiums. To adopt the position advocated by the claimant, the *Stearman* Court concluded it would be usurping the responsibilities uniquely delegated to the legislative branch. *Id.* at 454, 849 A.2d 539.

This Court first considered the validity of a fellow employee exclusion in *Larimore v. American Ins. Co.*, 69 Md.App. 631, 519 A.2d 743 (1987) *("Larimore I")*. The automobile policy provision in that case excluded all coverage for injuries sustained by a worker during the course of employment that resulted from the negligent operation of a covered motor vehicle by a fellow employee. There was not, as there is in this case, a contractual exception for the legislatively mandated $20,000/$40,000 minimum liability coverage. *Id.* at 638, 519 A.2d 743.

We stated in *Larimore* that the public policy behind mandatory minimum liability coverage was not "protection for the negligent user or operator of an automobile," but instead, "the compensation of injured victims of automobile accidents." *Id.* at 644–45, 519 A.2d 743. We concluded that compensation for the injured victims of automobile accidents who are injured in the course of their employment by a fellow employee's negligent operation of a motor vehicle was guaranteed, "without litigating any issue of fault, [by] worker's compensation benefits that may exceed the statutorily required $20,000 minimum motor vehicle liability coverage." *Id.* at 638–39, 519 A.2d 743. Because those excluded under the policy exclusion were guaranteed an alternate means of recovery for injuries, we held that the fellow employee provision did not contravene public policy or Section 17 of the Transportation Article. *Id.*

The Court of Appeals reversed that decision in *Larimore v. American Ins. Co.*, 314 Md. 617, 552 A.2d 889 (1989) *("Larimore II")*. The Court took issue with this Court's conclusion that a fellow employee would be guaranteed collateral source payments. It pointed out that, in some instances, the injured employee may be unable to recover "workers' compensation

equal to his actual tort damages up to $20,000." *Id.* at 623, 552 A.2d 889. Moreover, the exclusion provision did not provide for a set-off against workers' compensation benefits, but excluded motor vehicle liability coverage to fellow employees altogether. *Id.* at 623–24, 552 A.2d 889.

Because "Maryland workers' compensation law permits a worker, injured in the course of employment, to maintain a tort cause of action against a fellow employee whose negligence caused the injury, even though the injured worker may be entitled to or has collected workers' compensation benefits," the Court reasoned that validation of "the fellow employee exclusion in motor vehicle insurance policies could result in a large class of claimants being without liability insurance coverage and in a large class of uninsured motorists." *Id.* at 624–25, 552 A.2d 889. Finally, the Court recognized that, although a number of foreign jurisdictions had upheld fellow employee exclusions from automobile policies, those jurisdictions either did not maintain compulsory liability insurance statutes, had statutes that specifically provided for the exclusion, or had enacted workers' compensation laws that precluded a fellow employee from instituting a tort action. *Id.* at 625–26, 552 A.2d 889.

Unlike the fellow employee provision in *Larimore,* the fellow employee exclusion in this case expressly provides for liability coverage up to the statutory minimum. Therefore, Nationwide contends that the policy exclusion more closely resembles the policies at issue in *State Farm* and *Stearman,* which provided for reduced liability coverage to the statutory minimum for certain categories of individuals.

Citing *West American Ins. Co. v. Popa,* 352 Md. 455, 723 A.2d 1 (1998), Wilson contends that permitting an insurer to exclude certain individuals from full policy coverage will have the effect of depriving insureds of the value of their premiums. In *Popa,* the policy excluded vehicles "[o]wned or operated by a self-insurer under any applicable motor vehicle law" or "[o]wned by any governmental unit or agency" as uninsured/underinsured vehicles. *Id.* at 474, 723 A.2d 1. The

insurer argued that the estate of the insured killed in an accident could not recover uninsured/underinsured motorist benefits because the vehicle at fault was a State police car. The Court of Appeals considered the insurer's argument that an invalid policy exclusion is invalid *per se* only to the statutory minimum level of coverage. Judge Eldridge, writing for the Court, stated:

> Adoption of the broad proposition advanced by [the insurer] would permit insurers to load up motor vehicle insurance policies with a multitude of *invalid exclusions,* thereby limiting coverage in numerous situations to the statutory minimums instead of the stated coverage limits set forth on the insured's declaration page. For example, an insured could purchase what he believed was $300,000 liability insurance, pay a premium for $300,000 liability insurance, and, after an accident, discover that he has only $20,000/$40,000 liability insurance because the circumstances fell within one or more of the many *invalid exclusions* or exceptions in the insurance policy. Persons who paid much more in insurance premiums for coverage in excess of minimums could, in many circumstances, receive no more than those who only paid for minimum coverage. Consequently, we decline to extend the holding of *State Farm v. Nationwide* ... beyond the household exclusion clause which was involved in that case.

*Id.* at 477, 723 A.2d 1 (emphasis added).

The *Popa* Court reasoned that Maryland law requires every automobile liability policy to contain uninsured/underinsured motorist coverage and permits such coverage to be excluded only in two circumstances. One is when the insured or a family member of the insured is injured by an uninsured vehicle owned by the insured or an immediate family member. The second is when the named insured, a family member, or another person with other applicable insurance is injured by an insured vehicle operated or used by a person specifically excluded from coverage under the policy. The exclusion of a police car as an uninsured/underinsured vehicle was not within

the statutory framework and therefore was an invalid exclusion. *Id.* at 474–76, 723 A.2d 1.

In discussing *State Farm*, the *Popa* Court indicated that it had not extended its reasoning in that case to any exclusion other than the household exclusion. It acknowledged that the issue of "whether, if an exclusion was void, the liability carrier was liable up to the stated policy limits or only to the extent of the statutorily required minimum" was not before the Court in *Larimore II*.[3] *Id.* at 476, 723 A.2d 1. The Court went on to explain that, in the absence of a waiver by the insured, the insurer was required by law to provide uniform uninsured/underinsured coverage equal to the liability coverage, and therefore, *Popa* was a "particularly inappropriate" case in which to apply the reasoning of *State Farm*. *Id.* at 478, 723 A.2d 1.

In declining to extend the holding in *State Farm*, the Court was obviously concerned that, after an accident, the purchaser of a policy could unexpectedly find that the coverage amount set-forth on the declaration page of the policy was limited to the statutory minimum. *Id.* at 477, 723 A.2d 1. Concern for the purchaser of a policy would have special relevance in the case of uninsured/underinsured coverage, which an insured purchases for his or her own protection, rather than to satisfy a statutory minimum coverage requirement.

Recently, in *Zelinski v. Townsend*, 163 Md.App. 211, 878 A.2d 623 (2005), *cert. granted, Harleysville Mut. v. Zelinski*, 389 Md. 398, 885 A.2d 823 (2005), this Court considered whether a named driver exclusion in a commercial policy was valid. The Zelinskis were injured when their vehicle was struck by a truck driven by Robert Townsend, an employee of Mac's Septic Service. After the Zelinskis obtained judgments against Townsend, they filed for a writ of garnishment directed to the Harleysville Mutual Insurance Company, which insured Mac's Septic Service under a commercial motor vehicle policy. The policy was amended in September 2000 to

---

**3.** The question was before the Court when *certiorari* was granted, but the appellant conceded at oral argument that, ordinarily, an insurer would be liable only for the minimum required coverage.

exclude Townsend as a covered driver after his license was suspended. *Id.* at 214, 878 A.2d 623. The circuit court determined that the named driver exclusion controlled and dismissed the writ of garnishment against Harleysville Mutual.

On appeal, the Zelinskis asserted that a named driver exclusion in the commercial policy was invalid in light of the legislative history of the named driver exclusion as codified at Ins. § 27–606. In 1989, the General Assembly repealed and reenacted the named driver exclusion, but limited its application to "automobile insurance polic[ies] issued in the State to a resident of a household, under which more than one individual is insured." *Zelinski,* 163 Md.App. at 216, 878 A.2d 623 (quoting 1989 House Bill 62, *codified as,* Ins. § 27–606(a)). We agreed and held that the named driver exclusion in the commercial motor vehicle policy was void, and remanded the case for a determination of the amount of coverage under the policy.

We explained that "Maryland law 'certainly does not *require* insurance companies to provide for coverage greater than that mandated by statute.'" *Id.* at 217, 878 A.2d 623 (quoting *Stearman,* 381 Md. at 448, 849 A.2d 539). We acknowledged that the Court of Appeals has said that not all exclusions in an automobile policy are invalid only to the extent of the statutory minimum, but concluded that the named driver exclusion in *Zelinski* could limit the carrier's liability to the statutory minimum coverage, far less than the full policy amount, if the policy exclusion was "(1) accompanied by a reduction in premiums, or (2) issued at the request of the insured to avoid an increase in premiums." *Id.* at 218, 878 A.2d 623.

■ A review of the case law leads us to the conclusion that the fellow employee exclusion in this case is valid. We explain.

■ Transportation § 17–103(b)(1) generally requires "a vehicle liability insurance policy written by an insurer authorized to write these policies in this State" as a minimum security for the "payment of claims for bodily injury or death

arising from an accident of up to $20,000 for any one person and up to $40,000 for any two or more persons, in addition to interest and costs." The only "vehicles or drivers" exempted from coverage are farm or "special mobile" equipment and vehicles "operated on a highway only to cross the highway from one property to another." Trans. § 17–102. Clearly then, it is the public policy of this State, as reflected in this legislation, that security for bodily and death claims be provided for all other motor vehicles in the form of liability coverage in the minimum amounts of $20,000 for one person and $40,000 for two or more persons. Therefore, an insurance policy provision that would exclude a non-exempted vehicle and its driver from the minimum required coverage is invalid because it violates the public policy effectuated by statute.

On the other hand, as the Court of Appeals recognized in *State Farm*, the statute creates a floor, and not a ceiling, and generally a contractual provision that conflicts with a public policy is only invalid to the extent of the conflict between the public policy and the provision. Accordingly, in *State Farm*, the Court concluded that the household exclusion was only invalid to the extent it denied mandatory minimum coverage. 307 Md. at 636–37, 516 A.2d 586.

The fellow employee exclusion in *Larimore II* made no exception for the legislatively mandated $20,000/$40,000 coverage. Contrary to public policy, that exclusion created both a large class of uninsured vehicles and a large number of claimants without liability coverage. But, as the Court of Appeals reiterated in *Popa*, the issue of whether a fellow employee exclusion is valid beyond the required minimum security was not before the court in *Larimore II*.

To be sure, household exclusions and fellow employee exclusions address different concerns. But, when we read *Popa* in the light of the more recent discussion of policy exclusions by the Court of Appeals in *Stearman*, we are persuaded that there is no logical reason not to extend *State Farm* to a fellow employee exclusion in an automobile policy that expressly

provides mandatory minimum coverage for the insured's vehicles and the drivers of those vehicles as required by law.

■ In Maryland, insurance policies are generally governed by the law of contracts. *Mesmer v. Md. Auto. Ins. Fund,* 353 Md. 241, 252, 725 A.2d 1053 (1999). Our courts have repeatedly said that, " ' "[a]n insurance contract," ' ... ' "like any other contract, is measured by its terms unless as statute, a regulation, or public policy is violated thereby." ' " *Prince George's County v. Local Gov't Ins. Trust,* 159 Md.App. 471, 479, 859 A.2d 353 (2004) (quoting *Chantel Assocs. v. Mt. Vernon Fire Ins. Co.,* 338 Md. 131, 142, 656 A.2d 779 (1995)). The fellow employee exclusion in the Auto Policy does not violate a statute, regulation, or public policy because the policy expressly provides for the minimum coverage mandated by the statute. Moreover, as we reasoned in *Matta v. Government Employees Ins. Co.,* 119 Md.App. 334, 705 A.2d 29 (1998), "An insurance company that contracts to underwrite specific coverage 'should not subsequently be expected to assume liability for a risk which it expressly excluded.' " *Id.* at 348, 705 A.2d 29 (quoting *Parker v. State Farm Mut. Auto. Ins. Co.,* 263 Md. 206, 216, 282 A.2d 503 (1971)). *See also Walther v. Allstate Insurance Co.,* 83 Md.App. 405, 411, 575 A.2d 339 (1990) ("Insurers have a right to limit their liability and to impose whatever condition they please in the policy so long as neither the limitation on liability nor the condition contravenes a statutory inhibition or the State's public policy.").

A fellow employee exclusion in a commercial automobile liability policy that provides coverage only "up to the minimum limit specified by the Maryland Vehicle Law" recognizes an employer's statutory duty to also insure employees under workers' compensation insurance for injuries sustained in the course of employment by a fellow employee's negligent operation of a vehicle. As a result of the exclusion, the employer can minimize the costs associated with providing for coverage under two separate policies, while, at the same time, provide a claimant with the statutorily mandated automobile liability coverage in addition to any workers' compensation benefits.

In this case, Allegheny, presumably a sophisticated business entity capable of understanding the terms of its contract with Nationwide, purchased both the Auto Policy and the Workers' Compensation Policy at the same time. The fellow employee provision was part of the original policy for which the parties bargained. There is no reason to believe that the premium paid by Allegheny did not reflect the reduced coverage limit for fellow employee liability included in the Maryland Changes Endorsement.

**JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLANT.**